FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARLIN D.,[1] <br>                Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>               Defendant. | No. 2:18-cv-00360-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine

whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, DAA is a material contributing factor to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the DAA and the addiction is not a material contributing factor to disability. *Id.* Plaintiff has the burden of showing that DAA is not a material contributing factor to disability. *See Parra*, 481 F.3d at 748.

## ALJ'S FINDINGS

On December 21, 2010, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of September 1, 1997. Tr. 95, 240-56. The applications were denied initially, Tr. 152-66, and on reconsideration, Tr. 169-79. Plaintiff appeared before an administrative law judge (ALJ) on October 4, 2012. Tr. 34-94. On November 14, 2012, the ALJ denied Plaintiff's claims. Tr. 10-33. On April 29, 2015, the United States District Court for the Eastern District of Washington (District Court)

granted Defendant's motion to remand the case for further proceedings.[3]  Tr. 702-19.  On remand, the Court instructed the Social Security Administration to conduct a DAA analysis and determine whether Plaintiff's substance abuse was material to a finding of disabled under Listing 12.05C.  Tr. 706.

On January 21, 2016, Plaintiff appeared before the same ALJ for a second hearing.  Tr. 614-61.  On February 4, 2016, the ALJ denied Plaintiff's claims.  Tr. 581-613.  On August 2, 2017, the District Court once again remanded the case for further proceedings.  Tr. 1131-57.  On remand, the Court instructed the Social Security Administration to complete a DAA analysis, as explicitly ordered by the District Court in the first remand, "and determine whether Plaintiff's substance

_____

[3] Plaintiff filed a subsequent claim for Title XVI disability benefits on March 16, 2015.  Tr. 584.  In the Appeals Council's August 10, 2015 order remanding the case to the ALJ, the Appeals Council vacated the November 14, 2012 ALJ decision, and remanded the case to the ALJ for "further proceedings consistent with the order of the [District Court]."  Tr. 722.  The Appeals Council also found the action with respect to the claim at issue rendered the subsequent claim a duplicate and directed the ALJ to "consolidate the claim files, create a single electronic record, and issue a new decision on the consolidated claims."  Tr. 722.

abuse [was] material to a finding of disabled under Listing 12.05C." Tr. 1154

(citing Tr. 706).

On June 13, 2018, Plaintiff appeared before a different ALJ for a third

hearing. Tr. 1042-88. On September 17, 2018, the ALJ denied Plaintiff's claims.

Tr. 1007-41. At step one of the sequential evaluation process, the ALJ found

Plaintiff, who met the insured status requirements through September 30, 2003,

had not engaged in substantial gainful activity since September 1, 1997. Tr. 1015.

At step two, the ALJ found that Plaintiff had the following severe impairments:

major depressive disorder, anxiety disorder, personality disorder, borderline

intellectual functioning, substance use disorder, status post left shoulder humerus

fracture with residual osteoarthritis, status post ankle fractures, degenerative disc

disease – lumber spine, and osteopenia. Tr. 1015.

At step three, the ALJ found Plaintiff's mental impairments, considering his

substance use disorder, met sections 12.04, 12.05, 12.06, and 12.08 of 20 C.F.R.

Part 404, Subpart P, Appendix 1. Tr. 1015-19. The ALJ found that if Plaintiff

stopped the substance use, he would not have an impairment or combination of

impairments that met or medically equaled any of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1019-23. The ALJ then concluded

that if Plaintiff stopped the substance use, Plaintiff would have the RFC to perform

light work with the following limitations:

ORDER - 9

[Plaintiff] would need to alternate between sitting and standing every hour but could remain on task; he could never crawl or climb ladders, ropes, or scaffolds; he could occasionally stoop and climb ramps or stairs; he could never reach overhead with the non-dominant left upper extremity; he should avoid all exposure to unprotected heights and occasional exposure to extreme cold temperatures and excessive vibration; he would be limited to simple, routine tasks (i.e., tasks requiring no higher than reasoning level 2); he could tolerate only occasional, simple changes in the work setting; he could have no more than occasional, superficial interaction with the public; and he should not be required to perform any complex written or verbal communication.

Tr. 1023.

At step four, the ALJ found that if Plaintiff stopped the substance use, he would be unable to perform any past relevant work. Tr. 1029. At step five, the ALJ found that prior to February 5, 2017, if Plaintiff stopped the substance use, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, electronics worker, and small products assembler II. Tr. 1030. The ALJ found that, beginning on February 5, 2017, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 1031. The ALJ concluded that Plaintiff was not disabled prior to February 5, 2017 but became disabled on that date and continued to be disabled through the date of

the ALJ's decision. Tr. 1031. Further, the ALJ found that Plaintiff's substance use

disorder was a contributing factor material to the determination of disability

because Plaintiff would not be disabled through February 4, 2017 if he stopped the

substance use. Tr. 1031. Therefore, the ALJ concluded that because the substance

use disorder was a contributing factor material to the determination of disability,

Plaintiff was not under a disability, as defined in the Social Security Act, at any

time from the alleged onset date though February 4, 2017. Tr. 1031.

The Appeals Council did not assume jurisdiction of the case, making the

ALJ's decision the Commissioner's final decision for purposes of judicial review.

*See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.984, 416.1484.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability insurance benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act. Plaintiff raises the following

issues for review:

1. Whether the ALJ properly determined that Plaintiff's substance use was

   material to the determination of disability at step three;

2. Whether the ALJ properly evaluated the medical opinion evidence;

ORDER - 11

3.   Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4.   Whether the ALJ conducted a proper step two analysis.

ECF No. 14 at 2.

## DISCUSSION

### A.   Drug and Alcohol Abuse (DAA) at Step Three

Plaintiff challenges the ALJ's finding that Plaintiff's substance abuse was material to his disability at step three. ECF No. 14 at 6-14. Social Security claimants may not receive benefits where DAA is a material contributing factor to disability. 20 C.F.R. §§ 404.1535(b), 416.935(b); 42 U.S.C. § 423(d)(2)(c). DAA is a material contributing factor if the claimant would not meet the SSA's definition of disability if the claimant were not using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). Plaintiff has the burden of showing that DAA is not a material contributing factor to disability. *See Parra*, 481 F.3d at 748.

At step three of the sequential evaluation, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed

impairment relevant to his claim. 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2p, 2017 WL 3928306, at *4 (effective March 27, 2017).

The ALJ determined that, since September 1, 1997, Plaintiff's impairments, including the substance use disorder, met Listings 12.04, 12.05, 12.06, and 12.08. Tr. 1015-16. However, the ALJ found that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.[4] Tr. 1019-23. Plaintiff

---

[4] On January 17, 2017, new 12.00 listings took effect. The Social Security Administration (SSA) has directed that if a court reversed a decision and remanded the case for further administrative proceedings after January 17, 2017, the SSA applies the current mental disorder rules to the entire period at issue in the decision made after the court's remand. *See* Revised Medical Criteria for Evaluating

ORDER - 13

challenges the ALJ's finding that he did not meet Listing 12.05 in the absence of alcohol use.  ECF No. 14 at 7-14.

Listing 12.05 describes symptoms a claimant must establish to be considered intellectually disabled.  Listing 12.05 now requires satisfaction of an "A" *or* "B" criteria.  *See* 20 C.F.R. Subpt. P, App. 1 §§ 12.00C (describing § 12.05 criteria); 12.05.  Listing 12.05C no longer exists under the current listings.  Tr. 1016.  Here, the ALJ separately addressed Listing 12.05A and 12.05B.  Tr. 1016-19, 1020-23.

*1.  Listing 12.05A*

Listing 12.05A is met when the claimant can demonstrate:

(1) Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

(2) Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

(3) The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began before your attainment of age 22.

20 C.F.R. Subpt. P, App. 1 §12.05(A)(1-3) (2017).

―――――――――――――――

Mental Disorders, 81 Fed. Reg. 66138, 66160–62 (Sept. 26, 2016).  Because the District Court remanded this case after January 17, 2017, the ALJ applied the current mental listings to the entire period at issue in this decision.  Tr. 1016-17.

ORDER - 14

The ALJ determined that, with or without substance use, Plaintiff did not meet the criteria for Listing 12.05A because he failed to demonstrate significant deficits in adaptive functioning manifested by dependence on others for personal needs. Tr. 1017, 1020. In making this finding, the ALJ cited the District Court's second remand order, which referenced the July 2015 opinion of Jeanette Higgins, Psy.D., that Plaintiff did not appear to have significant difficulties with activities of daily living or adaptive functioning. Tr. 1017 (citing Tr. 968, 1146). The ALJ also cited Plaintiff's August 2012 clinical interview with John Arnold, Ph.D., where Plaintiff reported that he lived alone and was able to attend to basic activities of daily living. Tr. 1017 (citing Tr. 1262). Plaintiff does not challenge this finding; thus, any challenge is waived. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

2. *Listing 12.05B*

Listing 12.05B is met when the claimant can demonstrate:

(1) Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

      b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

(2) Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

      a.  Understand, remember, or apply information; or

      b.  Interact with others; or

      c.  Concentrate, persist, or maintain pace; or

      d.  Adapt or manage oneself; and

(3) The evidence that the claimant's current intellectual and adaptive functioning and about the history of the claimant's disorder demonstrates or supports the conclusion that the disorder began prior to age 22.

20 C.F.R. Subpt. P, App. 1 §12.05(B)(1-3) (2017).

The ALJ determined that, including the substance use disorder, Plaintiff met Listing 12.05B, Tr. 1016-19, but that Plaintiff would not meet Listing 12.05B if he stopped the substance use, Tr. 1020-23. Plaintiff argues that the ALJ erred by finding that he would not meet Listing 12.05B without the substance use.

      a.     Listing 12.05B(1)

The ALJ determined that the results of Plaintiff's two full-scale IQ scores in the record were invalid, and therefore, Plaintiff failed to show that he met the criteria for Listing 12.05B(1) in the absence of substance use. Tr. 1021.

On November 14, 2012, the prior ALJ determined that Plaintiff was not disabled during the period at issue. Tr. 10-33. In a decision dated April 29, 2015,

ORDER - 16

the District Court granted Defendant's motion to remand, finding that "absent the drug and alcohol concerns, the record establishes that Plaintiff meets Listing 12.05C," however, the Court remanded the case solely to conduct a drug and alcohol analysis in the context of Listing 12.05C. Tr. 704-05. "More specifically, the [District Court found] that the record [was] not fully developed on the issue of the validity of Plaintiff's IQ score, particularly in relation to the potential impact that alcohol abuse could have had on the results." Tr. 705-06. In support of this finding, the District Court noted that at the time of Plaintiff's first full-scale IQ score of 70, assessed by James Bailey, Ph.D., in March 2011, Plaintiff reported that he had stopped drinking in 2008, which was inconsistent with evidence in the record that Plaintiff continued to drink "heavily" in 2009, 2010, and 2011 during the time the IQ test at issue was administered. Tr. 24, 76, 508-10, 539, 541, 706. For instance, at the first hearing in October 2012, Plaintiff testified that he had stopped drinking 10 months earlier, which would have been after the IQ test in March 2011. Tr. 76, 706. Further, the District Court observed that Dr. Bailey reported Plaintiff "appeared not to be malingering but not highly motivated during testing." Tr. 510. After considering this evidence, and "[g]iven the uncertainty surrounding the effect of Plaintiff's substance abuse on the outcome of his IQ test and the concerns raised by Dr. Bailey, the [District Court found] that a limited

remand [was] necessary because the record on a crucial issue [was] not fully developed." Tr. 706.

In keeping with the District Court's instruction to further develop the record as to the validity of Plaintiff's IQ score, particularly as to the impact of alcohol abuse on the results, Tr. 705, a subsequent psychological evaluation of Plaintiff was conducted by Dr. Higgins in July 2015, in which she assessed an identical full-scale IQ score of 70. Tr. 967. At that evaluation, Plaintiff "denied current use of alcohol for the past eight months but noted a period of heavy drinking and dependence between the ages of 17 and 35." Tr. 966. Dr. Higgins found that "[a]dequate rapport was established and the … results are considered a valid representation of [Plaintiff's] current functioning." Tr. 967. Moreover, Dr. Higgins noted that despite his full-scale IQ score of 70, Plaintiff "does not appear to have significant difficulty with activities of daily living or adaptive functioning; therefore, a diagnosis of Borderline Intellectual Functioning is offered as opposed to Intellectual Disability." Tr. 968.

In a second decision by the prior ALJ on February 4, 2016, the prior ALJ concluded that Plaintiff failed to meet his burden, as instructed by the District Court, to show that DAA was not "a contributing factor material to disability." Tr. 596-97. In a decision dated August 2, 2017, the District Court noted that "the central point of contention here is whether Plaintiff demonstrated a 'valid' verbal,

ORDER - 18

performance, or full-scale IQ score of 60 to 70, as required to meet prong two of Listing 12.05C, in light of 'the potential impact that alcohol abuse could have had on the results.'" Tr. 1145 (citing Tr. 705-06; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C). The District Court determined that in her second decision, the prior ALJ offered only a conclusory assertion that "[a]ll the evidence presented at hearing demonstrated his drinking does in fact negatively impact his level of functioning, including his I.Q. scores." Tr. 1146 (citing Tr. 597). The District Court found that the only evidence specifically offered by the ALJ regarding the impact of drinking on the validity of Plaintiff's IQ scores was as follows:

> [T]he IQ test in 2011 [conducted by Dr. Bailey] was done while claimant was drinking. Dr. Winfrey testified the claimant's substance abuse would negatively impact his scores. Therefore, the IQ testing is not valid and 12.05(c) [sic] requires a 'valid IQ test score.' Additionally, the test done in 2015 (which at that time by claimant's own testimony was done when he was still drinking) shows a Full Scale IQ score of 70.

Tr. 1146-47 (citing Tr. 598).

The District Court found that "the only evidence specifically offered by the ALJ to support her finding that the IQ testing was invalid, was the general assertion that 'Dr. [Nancy] Winfrey testified [Plaintiff's] substance abuse would negatively impact the scores.'" Tr. 1147 (citing Tr. 598). The District Court also determined that the prior ALJ failed to provide a specific citation for Dr. Winfrey's testimony on that point, and therefore, it was "unclear" whether Dr. Winfrey

opined "specifically as to a 'negative' impact of substance abuse on Plaintiff's full-scale IQ scores..." Tr. 1147-48 (citing Tr. 598). Further, the District Court acknowledged Defendant's argument that it was reasonable for the ALJ to find that Plaintiff's two IQ scores were not valid, considering that neither of the administering psychologists were aware of the true extent of Plaintiff's ongoing alcohol use. Tr. 1150. The District Court noted that Defendant supported its argument by citing (1) Plaintiff's testimony at the first hearing that he was still using alcohol during the time of Dr. Bailey's IQ assessment in March 2011, which was inconsistent with his statement to Dr. Bailey at the time of the test that he had not used alcohol since 2008; and (2) Plaintiff's statement to Dr. Higgins at the time of the IQ test in July 2015 that he had stopped drinking eight months prior, but testified in January 2016 that it had "been a little over four months" since the last time he had a drink, and that as of four months prior he was drinking twice or sometimes three times a week. Tr. 1150-51 (citing Tr. 507-08, 618-20, 966). The District Court found that, "while this evidence certainly pertains to the ALJ's finding regarding the credibility of his subjective complaints; Plaintiff correctly argues that the ALJ did not rely on this evidence as a reason to find the IQ scores invalid in this case," and cited its inability to affirm the ALJ's decision on a ground that the ALJ did not invoke in making her decision. Tr. 1151.

The District Court remanded this case for a second time, finding that the prior "ALJ erred by failing to analyze whether DAA is material to the determination of disability in the context of Listing 12.05C, and particularly as to the issue of the validity of Plaintiff's IQ score." Tr. 1154. On remand, the District Court instructed the ALJ to "complete a DAA analysis, as explicitly ordered by the District Court [in the first remand order], and 'determine if Plaintiff's substance abuse is material to a finding of disabled under Listing 12.05C.'" Tr. 1154 (citing Tr. 706).

As noted, the record includes two full-scale IQ tests, conducted as part of two separate evaluations. In March 2011, Dr. Bailey assessed a full-scale IQ score of 70. Tr. 509-10. Plaintiff reported to Dr. Bailey that he was not using alcohol at the time of the test, but Dr. Bailey noted that Plaintiff's report that he drank heavily between 1980 and 2008 "flies in the face" of documented instances of alcohol according to treatment records after 2008. Tr. 507-08. At his first hearing on October 4, 2012, Plaintiff testified that he last drank "about 10 months ago," which would have been December 2011. Tr. 76. Plaintiff reported to Dr. Higgins that he had not drank heavily since 1997, despite reporting to Dr. Bailey that he drank heavily through 2008. Tr. 508, 966. Further, Plaintiff reported to Kayleen Islam-Zwart, Ph.D., in April 2016, that he had not drank alcohol for over a year, although

he testified at the January 2016 hearing that he last drank alcohol "a little over four months" prior, or September 2015.  Tr. 618, 1271.

On June 13, 2018, a third hearing was held before a new ALJ.  Tr. 1042-88. After reviewing the evidence, the ALJ determined that Plaintiff's IQ scores were not valid due to Plaintiff's concurrent substance abuse and inconsistent statements about drinking.[5]  Tr. 1021.  The ALJ cited Plaintiff's "testimony at his first hearing that he used alcohol at the time of Dr. Bailey's IQ assessment in March 2011," and Plaintiff's "testimony at his second hearing in January 2016 that he last drank 'a little over four months' prior, or approximately September 2015, two months after Dr. Higgins' evaluation."  Tr. 1021.  The ALJ found that this evidence, along with

---

[5] As noted by the ALJ, "[t]he previous [Listing] 12.05C criterion states that the IQ tests must be 'valid,' while the current [Listing] 12.05 criteria eschews that language.  Nonetheless, I acknowledge that IQ tests must meet a certain standard per 12.00H; standardized intelligence test results are usable under [Listing] 12.05B1 when the measure employed meets contemporary psychometric standards for validity, reliability, normative data, and scope of measurement (see 12.00H2b)."  Tr. 1017; *see* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138–01 (Sept. 26, 2016), 2016 WL 5507752, *64.

the objective evidence in the record regarding Plaintiff's alcohol use, supported a determination that Plaintiff's IQ scores were invalid, "particularly in reference to his test in 2011." Tr. 1021. The ALJ found that Plaintiff's "admission that he drank at the time of the 2011 test," combined with objective records, indicated that Plaintiff "was using significant amounts of alcohol that would arguably affect his IQ and other test results." Tr. 1021. The ALJ also determined that Plaintiff's inconsistent reports about his alcohol use detracted from the legitimacy of his statements that he was not using alcohol at the time of the 2015 IQ test administered by Dr. Higgins. Tr. 1021.

The ALJ found that "[n]either Dr. Bailey nor Dr. Higgins had accurate information when conducting their evaluations, and the conclusions from those evaluations do not merit significant weight." Tr. 1021. The fact that a medical report reflects a claimant's functioning while using drugs or alcohol is a valid consideration when evaluating a medical opinion. *Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016). Therefore, an ALJ may properly reject a medical opinion that is rendered without knowledge of a claimant's substance abuse. *Coffman v. Astrue*, 469 Fed. App'x 609, 611 (9th Cir. 2012); *Serpa v. Colvin*, No. 11-cv-121-RHW, 2013 WL 4480016, *8 (E.D. Wash. Aug. 19, 2013). Plaintiff argues that the ALJ failed to cite evidence that alcohol use would invalidate his IQ scores. ECF No. 14 at 11 (citing Tr. 1147-48). While

the ALJ did not specifically find that Plaintiff was intoxicated during his

evaluations with Dr. Bailey or Dr. Higgins, the ALJ cited evidence that neither

doctor had accurate information about the extent of Plaintiff's substance abuse at

the time that both IQ tests were administered.  Tr. 1020-21; *see* Tr. 476 (September

2010: Plaintiff presented intoxicated to a hospital's emergency room and hospital

personnel noted that he left to drink more alcohol); Tr. 508 (March 2011: Plaintiff

reported to Dr. Bailey at the time of his IQ test that he had no current alcohol use,

but that he engaged in "heavy alcohol use" between 1980 and 2008, up to six

drinks a day); Tr. 507 (March 2011: Dr. Bailey noted at Plaintiff's evaluation that

Plaintiff was still drinking as late as November 2009, as evidenced by a hospital

report from that month stating that Plaintiff smelled of alcohol and was given a

diagnosis of alcohol dependence or alcoholism); Tr. 518 (July 2011: Plaintiff's

ethanol level in his blood was 422, and levels above 400 are considered possibly

lethal); Tr. 1262 (August 2012: Plaintiff reported that he had last drank alcohol 10

months prior, which was October 2011, and that he drank a 12-pack of beer and a

fifth of vodka daily); Tr. 76 (October 2012: Plaintiff testified at his first hearing

that he last drank "about 10 months ago," which would have been December

2011); Tr. 1425 (March 2016: Plaintiff informed his counselor that he drank every

day until 2012); Tr. 966 (July 2015: Plaintiff reported to Dr. Higgins at his

evaluation that he had not used alcohol during the previous eight months, and

acknowledged a period of heavy drinking between 1979 and 1997); Tr. 618

(January 2016: Plaintiff testified at his second hearing that he last drank "a little

over four months" prior, or September 2015); Tr. 1271 (April 2016: Plaintiff

reported to Dr. Islam-Zwart that he had not drank alcohol for over a year).

It is well-settled in the Ninth Circuit that the ALJ has the authority to decide

whether an IQ score is "valid," however, "[the Ninth Circuit has] never decided

what information is appropriately looked to in deciding validity." *Thresher v.*

*Astrue*, 283 Fed. App'x 473, 475 n.6 (9th Cir. 2008) (unpublished). In determining

whether an IQ score is "valid" in the context of the prior Listing 12.05C, courts

have considered factors including: evidence of "substantial" malingering; daily

activities inconsistent with the level of impairment claimed; inconsistencies

between test results; and conflicting medical opinions. *See Wedge v. Astrue*, 624

F.Supp.2d 1127, 1131-35 (C.D. Cal. 2008). The Ninth Circuit has acknowledged

that some courts have said that an IQ score can be questioned on the basis of "other

evidence," and other courts require "some empirical link between the evidence and

the score." *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1057 (citing *Thresher*, 283 Fed.

App'x at 475 n. 6). Here, the ALJ offered evidence that Plaintiff misrepresented

the time period and extent of his alcohol use, which resulted in Dr. Bailey and Dr.

Higgins having a lack of information about Plaintiff's ongoing alcohol use when

administering his IQ tests. The ALJ reconsidered the validity of Plaintiff's IQ

scores "in relation to the potential impact that alcohol abuse could have had on the results," as initially ordered by the District Court, and the ALJ's finding that Plaintiff's IQ scores were not a valid representation of his IQ in the absence of substance abuse, is supported by substantial evidence.

        b.      Listing 12.05B(2)

        The ALJ found that if Plaintiff stopped the substance use, he would not meet the requirements of Listing 12.05B(2) because he would not have an extreme limitation of one, or marked limitation of two, of the four identified areas of mental functioning. Tr. 1021-23. The ALJ concluded that when considering Plaintiff's substance use, he had marked limitations in the areas of interacting with others, adapting or managing himself, and concentrating, persisting, or maintaining pace, and a moderate limitation in the area of understanding, remembering, or applying information. Tr. 1016. The ALJ determined that, regardless of his sobriety, Plaintiff retained a moderate impairment in the area of understanding, remembering, or applying information, and a marked limitation in the area of concentrating, persisting, or maintaining pace. Tr. 1020, 1022-23. However, the ALJ found that, in the absence of alcohol, Plaintiff's limitations in the areas of interacting with others and adapting or managing himself would improve from marked to moderate. Tr. 1016, 1020, 1022-23.

### i. Interact with Others

The prior ALJ found that Plaintiff's limitations in the area of social functioning improved from marked to moderate in the absence of alcohol. Tr. 590, 592. Revised Listing 12.05B no longer includes this area of mental functioning, but instead includes the area of interacting with others, which the ALJ noted is "essentially the same" as the former area of social functioning. Tr. 1022. Interacting with others refers to the "abilities to relate to and work with supervisors, co-workers, and the public" and includes "cooperating with others; asking for help when needed; handling conflicts with others; stating your own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. § 404, Subpart P, Appendix 1. The prior ALJ cited notations from three separate examinations to support her finding of Plaintiff's improvement in this area of mental functioning. Tr. 592. First, she cited a June 22, 2009 examination with Karen Bichler, ARNP, where Plaintiff reported that he had abstained from alcohol for three months. Tr. 592 (citing Tr. 411). The prior ALJ noted that ARNP Bichler's treatment notes showed that Plaintiff was well appearing, in no distress, and he had a normal mood and affect. Tr. 592 (citing Tr. 411). Second, the prior

ALJ cited an examination with Kathy Jamieson-Turner, MS, LMHC, that occurred two days later, on June 24, 2009, and showed that Plaintiff arrived on time for his appointment, was clean and casually dressed, his eye contact, speech content, speech fluency, and affect were within normal limits, and he was cooperative. Tr. 592 (citing Tr. 405). Finally, the prior ALJ cited to the mental status examination conducted by Dr. Bailey on March 22, 2011, where no evidence of current substance use was noted. Tr. 508, 592. The ALJ highlighted Dr. Bailey's report that Plaintiff's grooming was fair, he was cooperative, and his mood and affect were mostly congruent. Tr. 592 (citing Tr. 509).

The ALJ adopted the prior ALJ's reasoning and concluded that the cited evidence supported the determination that, without alcohol, Plaintiff's ability to interact with others improved from a marked to a moderate impairment. Tr. 1022. However, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014). Here, the ALJ's finding is not supported by substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (recognizing that conclusory reasons

do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion). Both ALJs failed to explain how the cited evidence demonstrated an improvement in Plaintiff's ability to interact with others in the absence of alcohol. Although the prior ALJ cited notations in treatment records in support of her finding of improvement in Plaintiff's ability to interact with others in the absence of alcohol, a review of the record reveals similar notations in treatment records during periods of heavy alcohol use and intoxication. *See, e.g.,* Tr. 487-88 (November 10, 2009: provider reported that Plaintiff's alcohol level was 0.33, noted that he "drinks alcohol every day," and found him to be an "[a]lert, oriented, very unkempt appearing gentleman with some blood on his face, bandage on the nose and strong smell of alcohol to the breath," while also noting that mentally, he was alert, oriented, and "very cooperative"); Tr. 485 (January 27, 2010: provider reported that Plaintiff "does drink significant amounts of alcohol daily," he was "conversant," "disheveled," "interactive, alert and appropriate"); Tr. 451-52, 480 (March 17, 2010: provider noted that Plaintiff was alert and oriented to person, place and time, he was well-groomed and an apparent good historian with grossly intact memory, appropriate mood and congruent affect, but just four days earlier it was noted that Plaintiff "drinks alcohol daily," he smelled of alcohol, he admitted to drinking that night, and was a "somewhat poor historian"); Tr. 473 (March 18, 2010: at an office visit for a lower left extremity injury, Plaintiff admitted to

consuming alcohol occasionally, and provider stated he was well-developed and well-appearing, in no apparent distress, and he appeared slightly disheveled); Tr. 472 (March 25, 2010: presenting for a left ankle injury and fibular fracture, provider noted that Plaintiff was relatively well-appearing and in no apparent distress); Tr. 478 (August 25, 2010: provider reported that Plaintiff typically drank a six-pack or more of alcohol daily, and on examination found him to be alert, oriented, and in no acute distress); Tr. 458 (September 28, 2010: at an office visit for a fracture, provider described Plaintiff as "pleasant"); Tr. 476 (September 29, 2010: Plaintiff presented for "[a]lcohol intoxication, falls, laceration," and provider reported Plaintiff "admits to drinking significant amounts of Icehouse beer today," he "[d]rinks alcohol daily," he was "a poorly groomed, disheveled gentleman, smells strongly of cheap alcohol," but also found him to be "alert and oriented, although intoxicated," with a pleasant affect).

The only other evidence cited by the ALJ to support Plaintiff's improvement in this functional area was the testimony of nonexamining psychologist Sally Clayton, Ph.D. Tr. 1022. A nonexamining doctor's opinion may constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). At Plaintiff's most recent hearing, Dr. Clayton testified that in the absence of substance use, Plaintiff would have a moderate limitation in interacting with others. Tr. 1020,

1022, 1056-57.  Although the ALJ assigned great weight to Dr. Clayton's opinion, the testimony of a nonexamining source alone cannot constitute substantial evidence.  As discussed *supra*, the evidence cited by the prior ALJ and adopted by the ALJ in the most recent decision did not constitute substantial independent evidence to support the ALJ's finding.  The ALJ erred in relying on Dr. Clayton's testimony alone as substantial evidence to support the finding that Plaintiff's limitations in this functional area improved from marked to moderate in the absence of alcohol.  Further, the ALJ relied on Dr. Bailey's March 2011 evaluation to represent both Plaintiff's sober and impaired functioning.  *See* Tr. 1021 (The ALJ stated, "[Plaintiff] informed Dr. Bailey in March 2011 that he did not use alcohol, but he admitted at his first hearing that he was using at the time of the evaluation").

This error is harmless.  A district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina,* 674 F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  A claimant must satisfy all three prongs of Listing 12.05B in order to meet this listing.  20 C.F.R. Subpt. P, App. 1 §12.05(B)(1-3) (2017).  As discussed *supra*, Plaintiff failed to meet his burden to show that, without substance use, he had a valid full-scale IQ score of 70 or below, and thus, he does not meet the first prong of Listing 12.05B.

Therefore, the ALJ's error here is harmless as it is inconsequential to the ALJ's ultimate non-disability determination. *Molina*, 674 F.3d at 1115.

### ii. Adapt or Manage Oneself

The ALJ found that Plaintiff's limitations in the area of adapting or managing himself improved from marked to moderate in the absence of alcohol.[6] Tr. 1023. Adapting or managing oneself refers to a claimant's "abilities to regulate emotions, control behavior, and maintain well-being in a work setting" and includes "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. § 404, Subpart P, Appendix 1. Plaintiff argues that the ALJ relied solely on Dr. Clayton's nonexamining opinion to support this finding of improvement. ECF No. 14 at 9. The ALJ credited Dr. Clayton's testimony that Plaintiff was moderately limited in this area without alcohol use. Tr. 1022, 1057.

---

[6] The prior ALJ did not address Plaintiff's ability to adapt or manage himself, as that functional area was not one of the domains considered at the time of the prior's ALJ's decision in this case. Tr. 1022.

ORDER - 32

However, the ALJ also relied on Dr. Arnold's opinion from a 2012 psychological evaluation where he determined that Plaintiff was moderately limited in adapting to changes in a routine work setting, maintaining appropriate behavior, and planning independently. Tr. 1022 (citing Tr. 1263-64). While Dr. Arnold also opined in his 2012 evaluation that Plaintiff was severely limited in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision and complete a normal workday and work week without interruptions from psychologically based symptoms, as discussed *infra*, the ALJ provided specific and legitimate reasons to discount Dr. Arnold's severe ratings. Tr. 1022, 1025, 1263-64.

The ALJ also relied on Dr. Islam-Zwart's opinion that Plaintiff was moderately limited in his ability to adapt to changes in a routine work setting, maintain appropriate behavior, and complete a normal workday and week without interruptions from psychologically based symptoms, and he had "none or mild" limitations in being aware of normal hazards, taking appropriate precautions, and planning independently. Tr. 1023 (citing Tr. 1268). Plaintiff argues that the ALJ cited some of Dr. Islam-Zwart's opined limitations to support his finding in this functional area but failed to address or provide reasons for rejecting her opinions as to some of Plaintiff's marked impairments that were pertinent to this domain. ECF No. 14 at 9 (citing Tr. 1023, 1268). The ALJ is not permitted to "cherry pick"

from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23 (9th Cir. 2014). Dr. Islam-Zwart rated Plaintiff as markedly limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision, learn new tasks, and communicate and perform effectively in a work setting. Tr. 1268. The ALJ assigned Dr. Islam-Zwart's opinion "little weight overall." Tr. 1027. However, the ALJ failed to explain the opined limitations that he was rejecting, and instead provided the conclusory statement that although he agreed with Dr. Islam-Zwart that Plaintiff's "tests suggest 'some cognitive difficulty,'" he did not agree with her conclusion that his "presentation is such that he is unable to work at this time." Tr. 1027 (citing Tr. 1273). Plaintiff also argues that the ALJ improperly rejected other medical opinion evidence to support Plaintiff's marked limitations in the area of adapting or managing himself, including Dr. Higgin's opinion that Plaintiff did not have the ability to respond appropriately to typical work situations or changes in a routine work setting. ECF No. 14 at 10. As already noted, and discussed *infra*, the ALJ discounted Dr. Higgins' opinion in part because she did not have accurate information from Plaintiff when conducting her evaluation. Tr. 1023. Plaintiff essentially invites this Court to reweigh the evidence. The Court "may neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing

ORDER - 34

*Thomas*, 278 F.3d at 954); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The ALJ provided substantial evidence to support his finding.

### c. Listing 12.05B(3)

The ALJ found that Plaintiff met the criteria for Listing 12.05B(3). The ALJ deferred to the District Court in finding that the evidence of Plaintiff's intellectual disorder supported the conclusion that it began prior to age 22. Tr. 1023.

## B. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Jeanette Higgins, Psy.D., Kayleen Islam-Zwart, Ph.D., John Arnold, Ph.D., Arvin J. Klein, M.D., and Karen D. Bichler, ARNP. ECF No. 14 at 18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan*, 246 F.3d at 1201-02 (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

2014) (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[7]

However, an ALJ is required to consider evidence from non-acceptable medical

sources. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. §§

404.1513(d), 416.913(d) (2013). "Other sources" include nurse practitioners,

physicians' assistants, therapists, teachers, social workers, spouses and other non-

medical sources. 20 C.F.R. § 20 C.F.R. § 416.913(d) (2013). An ALJ may reject

the opinion of a non-acceptable medical source by giving reasons germane to the

opinion. *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Higgins

On July 13, 2015, Plaintiff underwent a consultative examination with

Jeanette Higgins, Psy.D. Tr. 965-69. At the examination, Plaintiff denied alcohol

use during the prior eight months, but he reported a period of heavy drinking and

dependence between the ages of 17 and 35. Tr. 966. Plaintiff received a score of

70 on a full-scale IQ test administered by Dr. Higgins. Tr. 967. Dr. Higgins

opined that Plaintiff did not appear to have significant difficulty with activities of

_____

[7] For cases filed prior to March 27, 2017, the definition of an acceptable medical

source, as well as the requirement that an ALJ consider evidence from non-

acceptable medical sources, are located at 20 C.F.R. §§ 404.1513(d), 416.913(d)

(2013).

daily living or adaptive functioning and therefore, "a diagnosis of borderline

intellectual functioning is offered as opposed to intellectual disability." Tr. 967-

68. Based on behavioral observations, a mental status examination, and IQ test

performance, Dr. Higgins opined that Plaintiff had the ability to understand,

remember, and carry out simple instructions and to make simple work-related

judgments. Tr. 968. She opined that Plaintiff did not have the ability to

understand, remember, and carry out complex instructions, or to make judgments

on complex work-related decisions given cognitive deficits and a self-reported

inability to multi-task. Tr. 968. Dr. Higgins found that Plaintiff did not have the

ability to interact appropriately with the public given cognitive deficits and anxiety

symptoms. Tr. 968. She found that he had the ability to appropriately interact

with a supervisor and coworkers who were "patient, tolerant, and supportive." Tr.

968. Dr. Higgins opined that Plaintiff did not have the ability to respond

appropriately to typical work situations and to changes in a routine work setting.

Tr. 968.

Plaintiff argues that the ALJ did not directly weigh Dr. Higgins' opinion.

ECF No. 14 at 14-15. The ALJ is required to consider "all medical opinion

evidence." *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)).

However, the ALJ explicitly stated that he was incorporating the prior ALJ's

analysis and conclusions related to the medical evidence, and that he considered

the additional records submitted after the prior ALJ's decision.[8]  Tr. 1025.  The

prior ALJ gave some weight to the opinion by Dr. Higgins.  Tr. 602.  Because Dr.

Higgins' opinion was contradicted by the nonexamining opinion of Dr. Clayton,

Tr. 1056-57, the ALJ was required to provide specific and legitimate reasons for

discounting Dr. Higgins' opinion.  *Bayliss*, 427 F.3d at 1216.

          a.     Opinion Rendered Without Knowledge of Substance Use

       The ALJ discounted Dr. Higgins' opinion, concluding that it was based on

inaccurate information related to Plaintiff's substance abuse.  Tr. 1021, 1023.  An

ALJ may properly reject a medical opinion that is rendered without knowledge of a

claimant's substance abuse.  *See Coffman*, 469 F. App'x at 611; *Serpa*, 2013 WL

4480016, at *8.  Here, the ALJ noted that Plaintiff provided inconsistent statements

---

[8] The ALJ stated, "[i]n his previous appeal brief to the District Court, [Plaintiff]

raised the issues of whether the previous ALJ properly discredited his subjective

testimony and considered the medical opinion evidence…I find no reason to make

significantly different conclusions on the medical evidence that the prior ALJ

considered in determining [Plaintiff's] capacity.  I incorporate the analysis she

made herein.  However, I also considered the additional records submitted after her

decision, and I will discuss them chronologically in the following paragraphs."  Tr.

1024-25.

to Dr. Higgins about the timeline of his alcohol use. Tr. 1021 (referring to Tr. 966: Plaintiff reported to Dr. Higgins at the July 2015 evaluation that he had stopped drinking eight months earlier). As the ALJ noted, Plaintiff testified at the second hearing in January 2016 that it had "been a little over four months" since the last time he had a drink, and he also testified that as of four months before the hearing he was drinking twice or sometimes three times a week. Tr. 1150-51 (citing Tr. 507-08, 618-20, 966). Further, the ALJ noted that Plaintiff reported to Dr. Higgins he had not drank heavily since 1997, despite reporting to Dr. Bailey that he drank heavily through 2008. Tr. 508, 966, 1021. The ALJ also observed that Plaintiff reported to Dr. Islam-Zwart in April 2016 that he had not drank for over a year, although he testified at the January 2016 hearing that he last drank "a little over four months" prior, or September 2015. Tr. 618, 1021, 1271. A claimant's history of and current substance use is particularly relevant in a matter such as this where the ALJ is required to assess a claimant's functioning with and without substance abuse. 20 C.F.R. §§ 404.1535(b), 416.935(b). This was a specific and legitimate reason to reject Dr. Higgins' opinion. *See Coffman*, 469 F. App'x at 611 (upholding the ALJ's rejection of an examining psychologist's opinion, in part, due to the fact that the claimant "periodically concealed" from treatment providers his substance abuse issues); *see also Serpa*, 2013 WL 4480016, at *8 (the ALJ determined that the providers' opinions did not take into account the claimant's

history of substance abuse and narcotic-seeking behaviors, thus, they did not allow the evaluators a full review of the medical background with regard to the claimant's mental limitations).

### b. Opines No Functional Limitations

The prior ALJ discounted Dr. Higgins' opinion because she used "non-vocationally relevant terms such as supervisors and coworkers who are 'patient, tolerant, and supportive.'" Tr. 602, 968. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Dr. Higgins provided no further explanation of her opinion about Plaintiff's capacity to work with supervisors or coworkers or how these opined limitations would impact Plaintiff's functioning. Tr. 968. The ALJ reasonably discredited Dr. Higgins' findings about Plaintiff's limitations related to working with supervisors and coworkers as not sufficiently explained. Tr. 602. This was a specific and legitimate reason to discredit Dr. Higgins' opinion.

### c. Inconsistent with Activities

The prior ALJ discounted Dr. Higgins' opinion because it was inconsistent with Plaintiff's activities. Tr. 602. An ALJ may discount a doctor's opinion to the extent it conflicts with the claimant's activities. *Morgan*, 169 F.3d at 601-02. The

prior ALJ determined that Plaintiff demonstrated an ability to respond to work situations and changes because he was able to deal with public transportation and medical appointments. Tr. 602. However, the ALJ failed to explain how Plaintiff's ability use public transportation and attend medical appointments was inconsistent with Dr. Higgins' opined limitations regarding Plaintiff's ability to respond appropriately to typical work situations and to changes in a routine work setting. Tr. 968. Moreover, Dr. Higgins opined that Plaintiff did not appear to have significant difficulty with activities of daily living or adaptive functioning, and that he had the ability to understand, remember, and carry out simple instructions and to make simple work-related judgments. Tr. 967-68. Without further explanation of how these limited activities were inconsistent with the level of impairment Dr. Higgins found, the ALJ's conclusion is not supported by substantial evidence. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (recognizing that a claimant's ability to engage in activities that were sporadic or punctuated with rest, such as housework, occasional weekend trips, and some exercise, do not necessarily support a finding that she can engage in regular work activities). Any error by the ALJ in relying on Plaintiff's ability to use public transportation and attend medical appointments as a basis to discount Dr. Higgins' opinion is harmless because the ALJ provided other specific and legitimate

reasons, supported by substantial evidence, *see supra*, to discount Dr. Higgins'

opinion. *See Molina,* 674 F.3d at 1115.

### 2. Dr. Islam-Zwart

On April 26, 2016, Plaintiff had a psychological evaluation with Kayleen

Islam-Zwart, Ph.D. Tr. 1266-73. Dr. Islam-Zwart opined that Plaintiff was

severely limited in his ability to understand, remember, and persist in tasks by

following detailed instructions, and he was markedly limited in his ability to

perform activities within a schedule, maintain regular attendance, be punctual

within customary tolerances without special supervision, learn new tasks, and

communicate and perform effectively in a work setting. Tr. 1268. She also opined

that the combined impact of his impairments caused him marked limitation overall.

Tr. 1268. Dr. Islam-Zwart diagnosed Plaintiff with borderline intellectual

functioning (provisional); major depressive disorder, recurrent, in remission with

medication; alcohol use disorder, moderate, in remission; unspecified anxiety

disorder; and unspecified personality disorder. Tr. 1273. She noted that

"[c]ognitive testing would be necessary to determine the full extent of his

difficulties." Tr. 1273. She also opined that Plaintiff's presentation was such that

he was unable to work at that time, and his prognosis for the future "seems poor."

Tr. 1273.

The ALJ gave Dr. Islam-Zwart's opinion little weight. Tr. 1027. Because Dr. Islam-Zwart's opinion was contradicted by the nonexamining opinion of Dr. Clayton, Tr. 1056-57, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Islam-Zwart's opinion. *Bayliss*, 427 F.3d at 1216.

a.     Based on State Agency Rules

The ALJ assigned little weight to Dr. Islam-Zwart's opinion because she conducted her evaluation using regulations for the Washington State Department of Social and Health Services (DSHS) that differ from those under the Social Security Administration. Tr. 1027. The regulations provide that the amount of an acceptable source's knowledge of Social Security disability programs and their evidentiary requirements may be considered in evaluating an opinion, regardless of the source of that understanding. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). The regulations also require that every medical opinion will be evaluated, regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Although state agency disability rules may differ from Social Security rules regarding disability, it is not always apparent that the differences in rules affect a particular physician's report without further analysis by the ALJ. Here, the DSHS form defines "severe" as "the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop." Tr. 1267. The DSHS form defines "marked" as "a very significant limitation on the ability to perform one or more basic work

ORDER - 44

activit[ies]." Tr. 1267. As noted in *Steinmetz v. Colvin*, 2016 WL 697141 at *5 (E.D. Wa., Feb. 19, 2016), further analysis by an ALJ may be needed where a DSHS form does not define terms. Here, the terms are defined. This was not a specific and legitimate reason to discount Dr. Islam-Zwart's opinion. This error is harmless because the ALJ provided another specific and legitimate reason, supported by substantial evidence, *see supra*, to discount Dr. Islam-Zwart's opinion. *See Molina,* 674 F.3d at 1115.

       b.    Supportability

      The ALJ also discounted Dr. Islam-Zwart's assessment because she opined that Plaintiff would need cognitive testing to determine the full extent of his difficulties. Tr. 1027. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Dr. Islam-Zwart conducted an interview with Plaintiff along with a Mental Status Examination, a Mini-Mental Status Examination, Trails A and B tests, and a Fifteen Item Memory Test. Tr. 1270-73. Although she opined that "there was some indication of cognitive difficulty," she noted that "[c]ognitive testing would be necessary to determine the full extent of his difficulties." Tr. 1273. This was a specific and

legitimate reasons supported by substantial evidence to discount Dr. Islam-Zwart's

opinion. *See Bayliss*, 427 F.3d at 1216 ("[A]n ALJ need not accept the opinion of

a doctor if that opinion is brief, conclusory, and *inadequately supported by clinical*

*findings*") (emphasis added).

### 3. Dr. Arnold – 2012 Opinion

On August 15, 2012, examining provider John Arnold, Ph.D., conducted a

DSHS psychological evaluation of Plaintiff. Tr. 1261-65. Dr. Arnold noted that

Plaintiff was "preoccupied with physical health and prone to developing physical

issues in response to stress." Tr. 1262. He concluded that Plaintiff's

preoccupations caused moderate to marked interference in his work activity, while

his depression and anxiety had a "none-mild" effect on his ability to work. Tr.

1262. Dr. Arnold diagnosed Plaintiff with a pain disorder associated with both

psychological factors and a general medical condition, late onset dysthymia, and

alcohol dependence in sustained full remission per patient report. Tr. 1263. He

also diagnosed antisocial personality features and rule out borderline intellectual

functioning. Tr. 1263. Dr. Arnold also noted that Plaintiff's thought process and

content, orientation, perception, memory, fund of knowledge, and concentration

were within normal limits. Tr. 1265. Dr. Arnold opined that Plaintiff had "none or

mild" limitations in the ability to understand, remember, and persist in tasks by

following very short and simple instructions, perform routine tasks without special

ORDER - 46

supervision, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, and ask simple questions or request assistance. Tr. 1263-64. He opined that Plaintiff had moderate limitations in the ability to learn new tasks, perform routine tasks without special supervision, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. Tr. 1263-64. Dr. Arnold rated Plaintiff as markedly limited in the ability to understand, remember, and persist in tasks by following detailed instructions, and severely limited in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision and complete a normal workday and work week without interruptions from psychologically based symptoms. Tr. 1263-64. At the time of Dr. Arnold's evaluation, Plaintiff had reportedly stopped drinking for 10 months. Tr. 1262.

The ALJ gave Dr. Arnold's severe ratings little weight. Tr. 1027. Because Dr. Arnold's opinion was contradicted by the nonexamining opinion of Dr. Clayton, Tr. 1056-57, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Arnold's opinion from 2012 as to severe limitations. *Bayliss*, 427 F.3d at 1216.

a.    Internal Inconsistency

The ALJ found that Dr. Arnold's opinion as to Plaintiff's severe limitations was inconsistent with his own objective findings.  Tr. 1025 (citing Tr. 1262). Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Plaintiff argues that the ALJ's finding of inconsistency is unsupported because Dr. Arnold relied upon Plaintiff's pain disorder as the basis of his opinion.  ECF No. 14 at 16.  However, Dr. Arnold did not opine that any of Plaintiff's diagnosed impairments caused severe limitations.  Tr. 1262.  Dr. Arnold specifically opined that Plaintiff's pain disorder caused moderate to marked limitations in his work activity because that they would interfere with attendance, performance, pace, persistence, and social functioning.  Tr. 1262.  The ALJ also noted that Dr. Arnold's opinion that Plaintiff had none to moderate limitations in 10 of the remaining 11 categories of work activity contradicted his ratings of severe limitations.   Tr. 1025.  This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to discount the severe limitations assessed by Dr. Arnold in his 2012 opinion.

b. Relied on Plaintiff's Self-Reports

The ALJ discounted Dr. Arnold's opinion as to Plaintiff's severe limitations because Dr. Arnold based his findings solely on Plaintiff's self-reports. Tr. 1025. A physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Plaintiff argues that it was improper for the ALJ to discount Dr. Arnold's opinion as based solely on Plaintiff's self-reports, as Dr. Arnold performed extensive testing to support his conclusions. ECF No. 14 at 16 (citing Tr. 562-70). Dr. Arnold supplemented Plaintiff's diagnostic interview with testing in order to "gain a greater understanding of his response style" and "to form additional hypotheses regarding his psychological and/or personality functioning." Tr. 1262. However, as discussed *supra*, Dr. Arnold's assessed severe limitations were not consistent with own findings, including his opinion that Plaintiff's pain disorder caused moderate to marked limitations, Plaintiff's anxiety and depression caused "none to mild" limitations, and Plaintiff's poor sleep due to pain and rumination caused mild to moderate limitations in his ability to work. Tr. 1262. Plaintiff's mental status

examination revealed findings mostly within normal limits except for Plaintiff's

abstract thought and insight and judgment. Tr. 1265. Further, Dr. Arnold did not

review any records. Tr. 1261; *see* 20 C.F.R. §§ 404.1527 (c)(6), 416.927(c)(6)

(The extent to which a medical source is "familiar with the other information in

[the claimant's] case record" is relevant in assessing the weight of that source's

medical opinion). Absent reliance on objective medical evidence or Plaintiff's

medical records, all that remained as a basis for Dr. Arnold's opinion was

Plaintiff's self-reports. The ALJ found that Plaintiff provided consistent reports

about his substance use and physical impairments, and the Court does not assign

error to those findings. Moreover, Dr. Arnold reported that "[Plaintiff's]

profile…was deemed valid although there were indications he may have difficulty

admitting to the minor shortcomings that most people acknowledge." Tr. 1262.

In light of the ALJ's observations about Plaintiff's inconsistent statements,

the mostly normal results of Dr. Arnold's mental status examination, and the lack

of records available for Dr. Arnold's review, the ALJ reasonably concluded that

Dr. Arnold's assessment that Plaintiff had severe limitations in the ability to

perform activities within a schedule, maintain regular attendance, be punctual

within customary tolerances, and complete a normal workday/workweek without

interruptions from psychologically based symptoms was not supported by his

findings and was therefore heavily based on Plaintiff's self-reports. This is

particularly true where Dr. Arnold provided no explanation for the severe

limitations. This was a specific and legitimate reason, supported by substantial

evidence, for the ALJ to discount the severe limitations assessed by Dr. Arnold in

his 2012 opinion.

### 4. Dr. Arnold – 2014 Opinion

On May 23, 2014, Dr. Arnold conducted another DSHS psychological

evaluation of Plaintiff. Tr. 852-55. Dr. Arnold diagnosed Plaintiff with alcohol

dependence, major depressive disorder (recurrent, moderate), rule out alcohol-

related mood disorder, rule out somatoform disorder, antisocial personality

disorder, and rule out borderline intellectual functioning. Tr. 853. Dr. Arnold

noted that Plaintiff's thought process and content, orientation, perception, memory,

fund of knowledge, and insight and judgment were within normal limits. Tr. 855.

Dr. Arnold opined that Plaintiff had "none or mild" limitations in the ability to

understand, remember, and persist in tasks by following very short and simple

instructions, and moderate limitations in the ability to understand, remember, and

persist in tasks by following detailed instructions, perform routine tasks without

special supervision, adapt to changes in a routine work setting, make simple work-

related decisions, be aware of normal hazards and take appropriate precautions, ask

simple questions or request assistance, and set realistic goals and plan

independently. Tr. 854. He opined that Plaintiff had marked limitations in the

ability to perform activities within a schedule, maintain regular attendance, be

punctual within customary tolerances without special supervision, learn new tasks,

communicate and perform effectively in a work setting, maintain appropriate

behavior in a work setting, and complete a normal workday and work week

without interruptions from psychologically based symptoms.  Tr. 854.  Plaintiff

had reportedly been drinking alcohol 12 days before Dr. Arnold's evaluation.  Tr.

852

Plaintiff argues that the ALJ failed to weigh Dr Arnold's 2014 opinion.  ECF

No. 14 at 16.  However, as noted above, the ALJ incorporated the prior ALJ's

findings related to the medical opinion evidence.  Tr. 1024-25.  The prior ALJ gave

Dr. Arnold's 2014 opinion little weight.  Tr. 602.  Because Dr. Arnold's opinion

was contradicted by the nonexamining opinion of Dr. Clayton, Tr. 1056-57, the

ALJ was required to provide specific and legitimate reasons for discounting Dr.

Arnold's opinion from 2014.  *Bayliss*, 427 F.3d at 1216.

a.      Nature and Extent of Treatment Relationship

The ALJ discounted Dr. Arnold's 2014 opinion because he was not a

treating provider and he did not have substantial treatment notes upon which to

base his opinion.  Tr. 602.  The number of times a claimant meets with a provider

is a relevant factor in assigning weight to an opinion.  20 C.F.R. §§ 404.1527(c),

416.927(c).  Moreover, the extent to which a medical source is "familiar with the

other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Although this was Dr. Arnold's second evaluation of Plaintiff, he reported at the first evaluation that there were no records available to review. Tr. 1261. In 2014, Dr. Arnold reported that he reviewed records, however, he did not indicate what records were provided, or the extent of the records that he had available for review. Tr. 852. This was a specific and legitimate reason to discount Dr. Arnold's opinion from 2014.

b.    Opinion Reflects Functioning with Substance Abuse

The ALJ also discounted Dr. Arnold's 2014 opinion because his opined limitations included substance abuse. Tr. 602. In conducting a DAA analysis, the "key factor" for the ALJ to consider is whether the claimant would still be disabled if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). Therefore, the fact that a medical report reflects a claimant's functioning while using drugs or alcohol is a valid consideration to make in evaluating a medical opinion. *See Chavez*, 2016 WL 8731796, at *8. The ALJ cited Plaintiff's report to Dr. Arnold that he had consumed alcohol 12 days before his evaluation. Tr. 852. Plaintiff told Dr. Arnold that he consumed a six-pack of 14 ounce "high gravity" fortified malt liquor equaling two to two and a half beers each. Tr. 852. Although Dr. Arnold reported that Plaintiff's current impairments

were not primarily the result of alcohol use within the past 60 days, and that

Plaintiff's current impairments would persist following 60 days of sobriety, the

record shows Plaintiff self-reported heavy alcohol use just 12 days before Dr.

Arnold's evaluation. Tr. 852, 854. Based on this record, the ALJ reasonably

concluded that Dr. Arnold's opinion was entitled to less weight because it reflected

Plaintiff's functioning during a time period of contemporaneous substance abuse.

This was a specific and legitimate reason to discredit Dr. Arnold's 2014 opinion.

c.      Relies on Plaintiff's Self-Reports

The ALJ discounted Dr. Arnold's 2014 opinion because Plaintiff was not

forthright regarding his mental health treatment with Frontier Behavioral Health.

Tr. 602. The Ninth Circuit in *Ghanim*, 763 F.3d 1154, 1162 (9th Cir. 2014)

contemplated that medical sources rely on self-reports to varying degrees and held

that an ALJ may reject a medical source's opinion as based on unreliable self-

reports only when the medical source relied "more heavily" "on a patient's self-

reports than on clinical observations." 763 F.3d at 1162. Although Plaintiff

reported to Dr. Arnold that he was told that he did not need to go back to Frontier

Behavior Health after only two counseling sessions, the ALJ observed that the

record revealed that Plaintiff was a "no show" to his scheduled appointments. Tr.

602 (citing Tr. 941-42). Further, Dr. Arnold noted that Plaintiff reported that he

had three recent phone messages asking him to touch base with a counselor. Tr.

602, 852.  The ALJ reasoned that if Plaintiff did not provide credible information about his counseling to Dr. Arnold, it was reasonable that he did not provide credible reports of symptomatology either.  Tr. 602.  Plaintiff's mental status examination showed mostly normal results except for concentration and abstract thought, however, Dr. Arnold rated Plaintiff as markedly limited in five categories of basic work activity.  Tr. 854-55.  Therefore, it was reasonable for the ALJ to find that Dr. Arnold relied more heavily on Plaintiff's unreliable self-reports than on clinical observations.  *Ghanim*, 763 F.3d at 1162.  This was a specific and legitimate reason to discount Dr. Arnold's 2014 opinion.

    *5.  Dr. Klein*

    At Plaintiff's first hearing on October 4, 2012, nonexamining physician, Arvin J. Klein, M.D., testified as to Plaintiff's physical functioning.  Tr. 40, 42-47. Dr. Klein testified that Plaintiff would have no exertional limitations, he could sit for six hours, he was limited to walking for four hours in a workday, and he should not use foot pedals.  Tr. 44-45.  He opined that Plaintiff would have no postural limitations, with the exception of no climbing of ladders, ropes, or scaffolds due to his substance abuse.  Tr. 45.  Dr. Klein also stated that Plaintiff should have limited concentrated exposure to hazards such as heights and machinery due to his substance abuse.  Tr. 45.

The prior ALJ gave significant weight to Dr. Klein's opinion. Tr. 599. The ALJ detailed the prior ALJ's findings as to Plaintiff's physical limitations and stated that he adopted most of her reasoning. Tr. 1028. However, the ALJ "reconsidered the medical records" and determined that Plaintiff was not limited in his ability to walk for only four hours, as opined by Dr. Klein. Tr. 1028. The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Plaintiff argues that the ALJ did not provide any actual evidence to support his finding that Plaintiff was not limited in his ability to walk for only four hours in a workday, and instead only generally asserted that he reconsidered the medical records in making this finding. ECF No. 14 at 17 (citing Tr. 1028). However, the ALJ discussed the objective medical evidence before stating that he "reconsidered the medical records" and determined that Plaintiff was not limited in his ability to walk for only four hours. Tr. 1025-28; *see* Tr. 1512 (July 2013: scans showed Plaintiff's fractures were healing and he had no acute findings); Tr. 1286 (May 2016: Plaintiff had a normal gait and a negative straight-leg raising test); Tr. 1283, 1290 (September 2016: Plaintiff had a "fairly unremarkable" physical examination, with another lumbar scan that showed no acute abnormality); Tr. 1279 (March 2017: Plaintiff had full strength in his lower extremities, with negative straight leg raise). The ALJ referenced specific evidence in the medical

ORDER - 56

record and then discounted the walking limitation opined by Dr. Klein. The ALJ

did not err in rejecting this limitation opined by Dr. Klein.

### 6. ARNP Bichler

On June 22, 2009, Karen D. Bichler, ARNP, completed a DSHS physical

evaluation of Plaintiff. Tr. 407-14. ARNP Bichler reported that Plaintiff's lumber

spine x-rays showed mild to moderate L2 and mild L1 anterior wedge compression

fractures, stable; L5-S1 mild disc space narrowing and facet arthropathy; and L2-

miniaml retrolisthesis. Tr. 413. An MRI of Plaintiff's lumbar spine showed

anterior vertebral body height loss at L1 and L2, and no significant central canal

stenosis, neural foraminal stenosis, or evidence of nerve root compression. Tr.

414. ARNP Bichler opined that Plaintiff's overall work level was sedentary. Tr.

412. The ALJ gave ARNP Bichler's opinion little weight. Tr. 1029. Because

ARNP Bichler was an "other source," the ALJ was required to provide germane

reasons to discount her opinion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

1993).

### a. "Other Source" Opinion

In discrediting ARNP Bichler's opinion, the ALJ noted that she was not an

acceptable medical source. Tr. 1029. An ALJ must consider the testimony of lay

witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc.

Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot

establish the existence of medically determinable impairments, but lay witness

testimony is "competent evidence" as to "how an impairment affects [a claimant's]

ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill*, 12 F.3d at 918-19

("[F]riends and family members in a position to observe a claimant's symptoms

and daily activities are competent to testify as to her condition."). If lay testimony

is rejected, the ALJ "'must give reasons that are germane to each witness.'"

*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at

919). The fact that ARNP Bichler was not an acceptable medical source was not a

germane reason to reject her opinion.

> b. Inconsistent with the Record as a Whole

The ALJ discounted ARNP Bichler's opinion because it was inconsistent

with the record as a whole. Tr. 1029. Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion, the

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*,

495 F.3d at 631. Here, the ALJ discussed the objective medical evidence, stated

that he "reconsidered the medical records," and determined that ARNP Bichler's

limitation to sedentary work was not consistent with the medical evidence. Tr.

1025-26, 1029; *see* Tr. 1512 (July 2013: scans showed Plaintiff's fractures were

healing and he had no acute findings); Tr. 1286 (May 2016: Plaintiff had a normal

gait and a negative straight-leg raising test); Tr. 1283, 1290 (September 2016:

Plaintiff had a "fairly unremarkable" physical examination, with another lumbar

scan that showed no acute abnormality); Tr. 1279 (March 2017: Plaintiff had full

strength in his lower extremities, with negative straight leg raise). The ALJ

referenced specific evidence in the medical record and then discounted the

limitation to sedentary work opined by ARNP Bichler. This was a germane reason

to discount ARNP Bichler's opinion.

### C. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in

discrediting his subjective symptom claims. ECF No. 14 at 18-21. An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that if Plaintiff stopped the substance use, Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 1024.

The ALJ incorporated the prior ALJ's findings related to Plaintiff's subjective symptom claims.[9] Tr. 1024-25. Plaintiff argues that the ALJ erred by

_____

[9] The ALJ stated, "In his previous appeal brief to the District Court, [Plaintiff] raised the issues of whether the previous ALJ properly discredited his subjective testimony and considered the medical opinion evidence…I find no reason to make significantly different conclusions on the medical evidence that the prior ALJ considered in determining [Plaintiff's] capacity. I incorporate the analysis she made herein. However, I also considered the additional records submitted after her

ORDER - 61

"ostensibly incorporating" the prior ALJ's analysis regarding Plaintiff's symptom claims because the prior ALJ's analysis was conducted under a policy that was rescinded during the time between the second and third ALJ decisions in this case. ECF No. 14 at 19 (citing Tr. 594, 605, 1024-25, SSR 16-3p). SSR 96-7p, the regulation that governed credibility determinations at the time of the prior ALJ's February 2016 decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' .... [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). The Ninth Circuit has noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n. 5 (9th Cir. 2017) (quoting SSR 16-3p) (brackets in original). However, both regulations require an ALJ to consider the same factors in evaluating the

_____

decision, and I will discuss them chronologically in the following paragraphs." Tr. 1024-25.

ORDER - 62

intensity, persistence and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

Here, the prior ALJ offered clear and convincing reasons for not fully accepting Plaintiff's statements concerning the intensity, persistence and limiting effects of his claimed symptoms and their effect on his ability to work. Tr. 594-96. With respect to each ailment, the prior ALJ considered Plaintiff's allegations in the context of the full record and recited the specific ways in which the symptoms were not consistent with the medical evidence. Tr. 595-96; *see* SSR 16-3p. Moreover, the prior ALJ reasonably accepted Plaintiff's statements to the extent that they were consistent with the objective medical and other evidence. Tr. 595-96. The ALJ did not err by incorporating the prior ALJ's findings as to Plaintiff's subjective symptom claims.

### 1. *Inconsistent Statements Regarding Alcohol Use*

The prior ALJ discounted Plaintiff's symptom claims because he made inconsistent statements regarding his alcohol use. Tr. 594-95. Conflicting and inconsistent statements about substance use are appropriate grounds for the ALJ to discount a claimant's reported symptoms. *Thomas*, 278 F.3d at 959; *Edlund*, 253 F.3d at 1157; *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th Cir. 2010); *Lewis v. Astrue*, 238 F. App'x 300, 302 (9th Cir. 2007); *Morton v. Astrue*, 232 F. App'x 718, 719 (9th Cir. 2007). The prior ALJ cited numerous instances where

Plaintiff gave inconsistent information to providers regarding his substance use. Tr. 594-95; *see* Tr. 415-38, 449-57, 475-506, 508 (March 2011: Plaintiff reported to Dr. Bailey that he engaged in heavy alcohol use between 1980 and 2008, but records show he continued his heavy alcohol use in 2009, 2010, and 2011); Tr. 76, 619 (October 2012: Plaintiff testified at the first hearing that he stopped drinking 10 months earlier (December 2011), but at the second hearing he testified that his longest period of sobriety was a 10-month period in 2013); Tr. 619, 825 (January 2016: at the second hearing, Plaintiff testified that his longest period of sobriety was a 10-month period in 2013, but treatment records from 2013 document ongoing substance abuse with no evidence of a 10-month period of sobriety, and the longest documented period of sobriety in 2013 was two months in September 2013); Tr. 618-19, 966 (January 2016: Plaintiff testified at the second hearing that he had been drinking four months prior to the hearing (September 2015), but he told Dr. Higgins in July 2015 that he had been clean and sober for eight months).

Plaintiff contends that his inconsistent statements are explained by his impaired intellectual capacity and poor math skills which render him a poor historian. ECF No. 14 at 19. Plaintiff also argues that these inconsistencies can be explained by his multiple unsuccessful attempts to quit or reduce his drinking, which explains why he reported periods of sobriety before resuming alcohol use. ECF No. 14 at 19 (citing Tr. 1426). Plaintiff also contends that he differentiated

between drinking to the point of intoxication and having a few drinks. ECF No. 14 at 19 (citing Tr. 1051-52). Where the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). On this record, the ALJ reasonably concluded that Plaintiff inconsistently reported his substance use. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 2. *Inconsistent Statements Regarding Physical Impairments*

The prior ALJ also discounted Plaintiff's symptom claims because he made inconsistent statements regarding his physical impairments. Tr. 595. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). Plaintiff alleged that he was unable to work due to problems with his left shoulder which made it difficult for him to raise his left arm, back pain radiating to his hips that required him to recline and elevate his feet during the day, and ankle problems. Tr. 80-81, 83-84, 646. Plaintiff testified that standing or

sitting too long, or walking, caused pain. Tr. 80-81. The ALJ cited several

instances where Plaintiff gave inconsistent information about his physical

limitations. Tr. 595; *see* Tr. 81, 425, 509 (October 2012: Plaintiff testified to

walking only four to five blocks and then needing to rest, but other reports show

that he walked 10 miles a day or that he walked two hours per day); Tr. 82

(October 2012: Plaintiff testified that he saw an orthopedic doctor who

recommended a cane, but the medical evidence does not show that a doctor

prescribed or recommended the use of a cane); Tr. 83 (October 2012: Plaintiff

testified he had fallen twice since he stopped drinking, but treatment notes do not

document alleged falls without being under the influence of alcohol). The prior

ALJ also found Plaintiff's allegations that he was unable to work were inconsistent

with his ability to work odd jobs. Tr. 75, 595.

Plaintiff contends that the prior ALJ relied on "mostly trivial"

inconsistencies to discredit his symptom claims. ECF No. 14 at 19 (citing Tr. 595,

1103). Plaintiff argues that walking 10 miles led to emergency treatment for leg

pain and swelling and this was "not demonstrative of [Plaintiff's] capacity to

perform walking activities on a 'regular and continuing basis.'" ECF No. 14 at 20

(citing Tr. 425-26; SSR 96-8p). However, the emergency room treatment note

cited by Plaintiff shows that Plaintiff "does do a great deal of walking, ambulating

approximately ten miles a day, but this has not been significantly different than his

baseline." Tr. 425. Further, Plaintiff fails to address the evidence in the record

that he reported that he walked for two hours on a typical day. Tr. 509. Plaintiff

also contends that the ALJ erred in citing his ability to work odd jobs as

inconsistent with his alleged impairments because the work was not substantial

gainful activity. ECF No. 14 at 20. However, Plaintiff's ability to perform odd

jobs such as mowing lawns, painting, and building fences, even if not done at

substantial gainful activity levels, is inconsistent with Plaintiff's allegations of

disabling physical impairments such as an inability to walk, stand, or sit for too

long. Tr. 75. Plaintiff asserts that the ALJ incorrectly found that there was no

documentation of injuries to Plaintiff's legs other than from when he was using

alcohol, Tr. 595, 1104, because the record documents at least two such injuries.

ECF No. 14 at 20 (citing Tr. 459-60). While the treatment records do not indicate

that Plaintiff was using alcohol at the time of these two falls in September 2010,

there is evidence in the record that Plaintiff was drinking alcohol daily during this

time period. Tr. 459-60; *see* Tr. 1020, 476 (September 2010: Plaintiff presented

intoxicated to a hospital's emergency room and hospital personnel noted that he

left to drink more alcohol); Tr. 1021, 1425 (March 2016: Plaintiff informed his

counselor that he drank every day until 2012). On this record, the ALJ reasonably

concluded that Plaintiff provided inconsistent statements regarding his physical

impairments.  This finding is supported by substantial evidence and was a clear

and convincing reason to discount Plaintiff's symptom claims.

### 3. Inconsistent with Daily Activities

The prior ALJ found that Plaintiff's daily activities were inconsistent with

the level of impairment Plaintiff alleged.  Tr. 599.  The ALJ may consider a

claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day

engaged in pursuits involving the performance of exertional or nonexertional

functions, the ALJ may find these activities inconsistent with the reported

disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a

claimant need not vegetate in a dark room in order to be eligible for benefits, the

ALJ may discount a claimant's symptom claims when the claimant reports

participation in everyday activities indicating capacities that are transferable to a

work setting" or when activities "contradict claims of a totally debilitating

impairment."  *Molina*, 674 F.3d at 1112-13.

Here, the prior ALJ noted Plaintiff testified that he has lower back, left

shoulder, and right leg pain as a result of a car accident in 1997.  Tr. 79-80, 594.

Plaintiff testified that standing or sitting too long, or walking, caused pain.  Tr. 80-

81, 599.  He reported he could walk four to five blocks and then he needed to rest a

little bit.  Tr. 81, 599.  He stated he was able to lift 10 pounds.  Tr. 83, 599.  He

ORDER - 68

testified that since 1997, his mood varied and sometimes he felt good and sometimes he was depressed. Tr. 84-85, 599. He also said he did not handle stress or change well. Tr. 86, 599. The prior ALJ summarized Plaintiff's daily activities, including spending time walking in the park and attempts to look for work, Tr. 404, cooking, shopping, Tr. 509, taking and renewing his medications, scheduling his own appointments, washing dishes, doing laundry, vacuuming, and dusting, Tr. 1000. Tr. 599. Further, the prior ALJ noted that in May 2014, Plaintiff reported that he was up by about 6:00 a.m. and he took care of and played with his seven-month old daughter. Tr. 599 (citing Tr. 853). The ALJ noted that Plaintiff reported cleaning the house, getting ready for the day, trying to go for walks, and attending group meetings for substance abuse. Tr. 599 (citing Tr. 853). The prior ALJ indicated that Plaintiff worked as a bell ringer for the Salvation Army five days a week for four-hour shifts in December 2014. Tr. 599 (citing Tr. 901). The ALJ's finding that Plaintiff's daily activities were inconsistent with his specific alleged limitations is supported by substantial evidence.

### 4. Lack of Support in Longitudinal Record

The prior ALJ found Plaintiff's physical symptom complaints were not supported by the medical evidence. Tr. 595. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261

F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch*, 400 F.3d at 680.

Here, the ALJ noted Plaintiff testified to symptoms that caused him to be unable to work, such as the inability to lift 10 pounds and the inability to stand, sit, or walk too long without causing pain. Tr. 80-81, 83, 599. The prior ALJ noted that despite his testimony that a car accident in 1997 caused pain in Plaintiff's lower back, left shoulder, and right leg, Tr. 79-80, 594, limiting his ability to walk, stand, or sit for too long, Tr. 80-81, 599, the first medical evidence of record related to Plaintiff's lumbar spine was from a June 22, 2009 visit with ARNP Bichler. Tr. 595. At the evaluation with ARNP Bichler, Plaintiff reported that he worked until three and a half months prior mowing lawns and trimming bushes. Tr. 595 (citing Tr. 411). The prior ALJ noted examination findings throughout the record that were inconsistent with Plaintiff's level of physical impairment. Tr. 595-96; *see, e.g.,* Tr. 411, 413 (June 2009: Plaintiff's physical examination with ARNP Bichler revealed minimal abnormality of his lumbar spine); Tr. 454 (February 2010: examination of Plaintiff's lumbar spine showed tenderness in the

ORDER - 70

sacral area and pain with range of motion, however, Plaintiff had no spasms or ecchymosis, heel and toe walking was intact, his gait was without a limp, he had 5/5 strength in the lower extremities, and his deep tendon reflexes were equal and symmetrical); Tr. 572 (July 2012: x-ray of Plaintiff's lumbar spine showed no change); Tr. 578 (August 2012: physical examination of Plaintiff's lumbar spine was benign); Tr. 834 (December 2013: Plaintiff had a normal examination of his lumbar spine); Tr. 859-60 (January 2014: on physical examination, Plaintiff had stiff-legged gait, was unable to bend or walk, although he was able to toe walk, straight leg raise was positive with low back discomfort, and Plaintiff was diagnosed with low back pain); Tr. 861 (February 2014: a lumbosacral SPECT showed only moderate uptake); Tr. 857 (July 2014: Plaintiff had decreased range of motion in the lumbar spine, but Plaintiff said he did not feel he needed physical therapy); Tr. 877 (April 2015: Plaintiff reported that Tylenol helped his back pain).

Plaintiff asserts that the ALJ erroneously failed to consider Plaintiff's pain disorder which explains any reports of pain which may appear to exceed his physical limitations. ECF No. 14 at 21. As discussed *infra*, the ALJ did not err in failing to consider Plaintiff's pain disorder. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in

the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). Here, the prior ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of physical impairment alleged by Plaintiff. Tr. 595. The ALJ's finding is supported by substantial evidence.

### 5. *Minimal Treatment*

The prior ALJ discounted Plaintiff's symptom claims because there were sporadic treatment notes related to Plaintiff's lumbar spine with significant gaps in the treatment record. Tr. 595. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating a claimant's subjective symptoms. *Orn*, 495 F.3d at 638. Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). Further, the prior ALJ observed that Plaintiff failed to attend his psychological consultative examination with Jay Toews, Ed.D., Tr. 963, and his physical consultative

examination with Andrew Weir, M.D., Tr. 964, which undermined his allegations of severe impairments. Tr. 595.

Plaintiff argues that the prior ALJ erred by failing to consider other reasons for missed or minimal treatment before concluding that such treatment suggested less severe symptoms than Plaintiff alleged. ECF No. 14 at 20. Plaintiff asserts that he explained he had physical injuries limiting his ability to attend appointments. ECF No. 14 at 21 (citing Tr. 328, 965-68). The record includes a note from Plaintiff explaining that he was unable to attend his scheduled consultative evaluations due to breaking his leg. Tr. 328. The ALJ is required to consider Plaintiff's reasons for noncompliance. Here, the ALJ's discussion of Plaintiff's noncompliance did not consider whether Plaintiff's noncompliance was sufficiently explained. Tr. 644; *see Molina*, 674 F.3d at 1113-14. This reason is not supported by substantial evidence. Nevertheless, this error is harmless where, as discussed *supra*, the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one

impermissible reason for claimant's lack of credibility did not negate the validity

of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

**D.      Step Two**

Plaintiff contends the ALJ erred by failing to consider Plaintiff's pain

disorder at step two.  ECF No. 14 at 5.  At step two of the sequential process, the

ALJ must determine whether the claimant suffers from a "severe" impairment, i.e.,

one that significantly limits his physical or mental ability to do basic work

activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  To show a severe impairment,

the claimant must first prove the existence of a physical or mental impairment by

providing medical evidence consisting of signs, symptoms, and laboratory

findings; the claimant's own statement of symptoms alone will not suffice.  20

C.F.R. §§ 404.1521, 416.921.

An impairment may be found to be not severe when "medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to

work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is

not severe if it does not significantly limit a claimant's physical or mental ability to

do basic work activities; which include walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

understanding, carrying out and remembering simple instructions; responding

ORDER - 74

appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922; SSR 85-28 at *3.[10]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff cites to Dr. Arnold's August 2012 psychological evaluation where he diagnosed Plaintiff with a pain disorder associated with both psychological factors and a general medical condition. ECF No. 14 at 5-6 (citing Tr. 559). Dr. Arnold opined that this disorder caused Plaintiff to have a preoccupation with his physical health, resulting in moderate to marked impairments that would interfere with attendance, performance, pace, persistence, and social functioning. Tr. 558. Plaintiff also notes Dr. Arnold's May 2014 psychological evaluation where he

---

[10] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 75

diagnosed Plaintiff's condition as a "rule out" somatoform disorder. ECF No. 14 at 6 (citing Tr. 853). At the 2016 hearing, Dr. Winfrey testified that Plaintiff had an impairment under Listing 12.07. Tr. 630. The prior ALJ found that Plaintiff's impairments, including the substance use disorders, met Listing 12.07. Tr. 589. The prior ALJ also determined that, if Plaintiff stopped the substance use, his limitations would not meet or medically equal the criteria of Listing 12.07. Tr. 592. At the 2018 hearing, Dr. Clayton explained that this impairment would be considered a "somatoform" disorder under Listing 12.07. Tr. 1061-62; *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07. Notably, Dr. Clayton did not testify that Plaintiff had a somatoform disorder, but rather, she was responding to a question about Dr. Arnold's 2012 diagnosis of a pain disorder. Tr. 1061-62 (referring to Tr. 559). Further, Dr. Clayton testified that, with substance use, Plaintiff would meet Listings 12.04, 12.06, and 12.08. Tr. 1054-55. Dr. Clayton did not find that Plaintiff would meet Listing 12.07.

Although Dr. Arnold diagnosed Plaintiff with a pain disorder associated with both psychological factors and a general medical condition in 2012, Tr. 559, he evaluated Plaintiff again in 2014 and diagnosed him with "rule out" somatoform disorder, Tr. 853. "A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis *may* be met, but more information is needed in order to rule it out."

*Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 WL 499346, at *4 (C.D. Cal. Feb. 8, 2011) (emphasis in original) (internal citations omitted).  A "rule out" diagnosis, standing alone, is not sufficient to establish the existence of a severe impairment.  *See, e.g., Crawford v. Colvin*, No. C13-1786-JCC, 2014 WL 2216115, at *5 (W.D. Wash. May 29, 2014); *Jackson v. Astrue*, No. ED CV 09-677-PJW, 2010 WL 1734912, at *2 (C.D. Cal. Apr. 28, 2010); *Simpson v. Comm'r, Soc. Sec. Admin.*, No. Civ. 99-1816-JO, 2001 WL 213762, at *8 (D. Or. Feb. 8, 2001).  Therefore, Dr. Arnold's initial opinion that this disorder caused Plaintiff to have a preoccupation with his physical health, resulting in moderate to marked impairments that would interfere with attendance, performance, pace, persistence, and social functioning, was later replaced with his opinion that this was a "rule out" disorder.  Tr. 558.  Further, although Dr. Winfrey testified at Plaintiff's hearing in January 2016 that he met Listing 12.07, Tr. 630, Dr. Clayton testified at Plaintiff's hearing in June 2018 that Plaintiff met several other mental health listings, but not Listing 12.07, Tr. 1054-55.  The ALJ did not err in his step two analysis, as Plaintiff failed to establish that his pain disorder was a severe impairment.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 30, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE